UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE TIAMIYU, | No. 2:24-cv-2043 AC |
| Plaintiff, | |
| v. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 30, 2021, alleging disability as of August 3, 2021. AR 18.[2]  The application was disapproved initially on April 13, 2022 and after reconsideration on

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] Two copies of the AR are electronically filed, collectively as ECF No. 8 (AR 1 to AR 1162).

1

August 18, 2022.  Id.  On June 5, 2023, ALJ Patricia McKay presided over the telephonic hearing on plaintiff's challenge to the disapprovals.  AR 179-210 (transcript).  Plaintiff, who appeared with Daniel Gannon as counsel, testified at the hearing.  AR 179, 187.  Scott Silver, a Vocational Expert ("VE"), also testified at the hearing.  AR 179, 203.

On October 2, 2023, the ALJ found plaintiff "not disabled" as of plaintiff's December 30, 2021 application date under sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 18-28 (decision), 29-32 (exhibit list).  On May 23, 2024, after receiving Exhibit 15B, a Request for Review dated October 24, 2023, and Exhibit 26E, a representative brief dated November 19, 2023, as exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-6 (decision and additional exhibit list).

Plaintiff filed this action on July 26, 2024.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 5-7.  The parties' cross-motions for summary judgment, based on the Administrative Record filed by the Commissioner, have been briefed.  ECF Nos. 10 (plaintiff's summary judgment motion), 17 (defendant's summary judgment motion).

## II.  FACTUAL BACKGROUND

Plaintiff was born on November 11, 1987, and accordingly was, at age 34, a younger individual under the regulations on the date of her DIB application.  AR 27, 380; see 20 C.F.R. § 404.1563(c).  Plaintiff has a college education and can read and write simple messages in English.  AR 384.  She worked as a teaching assistant from August 2016 to March 2019, a reading resource teacher from August 2014 to May 2016, a program leader from January to June 2014, an instructional assistant from November 2020 to August 2021, and an instructional aide from January to June 2020.  AR 384.  Reported medical conditions include Chronic Post Traumatic Stress Disorder ("PTSD"), depression, anxiety disorder, insomnia, and uterine fibroids.  AR 383.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

2

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

DIB is available for every eligible individual who is "disabled."  42 U.S.C. § 402(d)(1)(B)(ii).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity [RFC] make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

4

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.
>
> 2. The claimant has not engaged in substantial gainful activity since August 3, 2021, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: Chronic post-traumatic stress disorder (PTSD) with social anxiety; major depressive disorder; generalized anxiety disorder with insomnia; and Cannabis use disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional interaction with supervisors and coworkers but only superficial contact with the general public; simple routine work which is work that requires only simple decisions and no complex decisions; and work that is self-paced as opposed to working in a production-rate environment or in a job with an hourly quota.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on November 11, 1987 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
>   11. The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2021, through the date of this decision (20 CFR 404.1520(g)).

AR 20-28.

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 28.

## VI.  ANALYSIS

### A.  The ALJ Adequately Considered Dr. Butts' Opinion

#### 1.  Medical Opinion of Dr. Butts

On June 7, 2023, Carmen Butts, M.D., completed a one-page questionnaire as to mental functioning. AR 1149. Dr. Butts checked the box indicating that plaintiff's impairments were likely to produce both good and bad days. She estimated that plaintiff would miss over four days per month due to her impairments, and would be off-task at least 25% of the time if employed on a full-time basis and doing even simple tasks. Dr. Butts also added a brief note indicating that plaintiff had daily panic attacks particularly when interacting with others, experienced crying spells and found it hard to stay motivated or get out of bed. These symptoms occurred three to five times per week. The questionnaire includes no information about the source of Dr. Butts' information, the existence of any treating relationship, documentation of any examination of plaintiff, or independent clinical findings. Id.

In her discussion of the medical opinion evidence in the case, the ALJ first addressed opinions from state agency and mental health consultants which she found either persuasive or partially persuasive for specified reasons. AR 25-26. "On the other hand," the ALJ found Dr. Butts' opinion unpersuasive because it was neither "consistent nor supported by the objective findings in the record[.]" AR 26. The ALJ noted plaintiff's daily activities like hiking, working part-time, and exercising four to five times per week, as well as medical opinions reporting that she can leave the house for such exercise. AR 26 (citing AR 179-210, 1127, 1150, 1153). The

cited portions of the record include plaintiff's hearing testimony and treating therapists' clinical notes.

### 2. Governing Legal Principles

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Because supportability and consistency are the most important factors, the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may explain how the other factors were considered, but is not required to do so unless two or more opinions are equally well-supported and consistent but not entirely identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3). In rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. Woods v.

7

Kijakazi, 32 F.4th 785 (9th Cir. 2022). In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 3. The ALJ Adequately Explained the Finding That Dr. Butts' Opinion Was Inconsistent With Other Evidence

The ALJ articulated permissible reasons for finding Dr. Butts' opinion inconsistent with "evidence from other medical sources and nonmedical sources," see 20 C.F.R. § 404.1520c(c)(1)-(2), by identifying numerous places in the record which document a level of functioning higher than that assessed by Dr. Butts. AR 26. Plaintiff focuses on the fact that the ALJ stated Dr. Butts' opinion was neither "consistent nor supported by the objective findings in the record," while citing not to objective clinical findings but to evidence of plaintiff's daily activities. ECF No. 10 at 11. However, it clear that the ALJ was using the phrase "objective findings" in this context to refer to objective rather than subjective evidence. Daily activities are objective indicators of functioning, and the governing regulations plainly permit their consideration when evaluating the consistency of a medical opinion with other evidence. See Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020) (conflict between physician's opinion and claimant's activity level is a specific and legitimate reasons for rejecting the opinion). Nothing in the regulations provides that a medical opinion may be rejected only for inconsistency with clinical findings. The court finds no error.

### 4. The ALJ's Failure to Explain the Finding Regarding Supportability Was Harmless

The ALJ did not discuss supportability and consistency separately, and she appears to have conflated these two distinct concepts. In finding that Dr. Butts' opinion was neither "consistent nor supported by the objective findings in the record," the ALJ relied entirely on inconsistency with other evidence. AR 26. The opinion's consistency with other evidence, which has been discussed above, is a different inquiry than supportability. The ALJ did not address whether the opinion was internally supported by the medical evidence relied on and explanations

provided by Dr. Butts.³  The ALJ is required to explain how *both* factors were considered.  20 C.F.R. § 404.1520c(b)(2).

However, when an ALJ comes to a conclusion about persuasiveness, either "[a] medical opinion without supporting evidence, *or* one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion."  82 Fed. Reg. at 5854 (emphasis added).  In Woods, supra, the Court of Appeals upheld an ALJ's rejection of a medical opinion that only addressed consistency, stating "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  32 F.4th at 787.  This suggests that an ALJ's error in addressing only supportability or consistency is harmless, so long as there is substantial evidence to support the finding.  See Joseph F. v. Kijakazi, No. ED CV-22-050-DFM, 2022 U.S. Dist. LEXIS 186452, 2022 WL 17903079, at *7 (C.D. Cal. Oct. 11, 2022) (collecting cases), appeal dismissed sub nom. Fields v. Kijakazi, No. 22-56187, 2023 U.S. App. LEXIS 6930, 2023 WL 2572464 (9th Cir. Jan. 26, 2023).

In this case, the ALJ clearly relied on inconsistencies between Dr. Butts' opinion and other evidence as the basis for finding Dr. Butts unpersuasive, and substantial evidence supports that conclusion.  The failure to separately discuss internal supportability does not, in this case, suggest that failure to analyze supportability affected the decision as to the persuasiveness of the opinion.  Indeed, Dr. Butts' report included no information about the basis for her conclusions, so supportability cannot have been meaningfully assessed.⁴

To be clear, the court is not saying that an ALJ is only required to consider consistency *or* supportability, or that meeting the substantial evidence standard trumps the need for ALJs to comply with the regulations regarding their statement of reasons.  Nor is the court suggesting that

---

³ This is not a case in which the medical opinion expressly relied on specified extrinsic evidence that did not, in fact, support its conclusions.  In such a case it might make sense for the ALJ to discuss the two factors together.

⁴ To the extent that Dr. Butts' brief notes regarding plaintiff's reported symptoms were the only basis for her conclusions, the ALJ had no way of knowing how or why Dr. Butts credited these reports or what other information about plaintiff's medical and mental health history was considered.  Accordingly, any determination of how well-supported the conclusions were would have been entirely speculative.

the failure to address one of the two factors is per se harmless error, or likely to constitute harmless error. However, on the record of this case, remand for the purposes of articulating a supportability analysis would only delay final resolution of the matter. The ALJ's omission has no bearing on the persuasiveness finding. The error is accordingly inconsequential to the ultimate nondisability determination, and therefore does not support remand. See Treichler v. Comm'r of Soc., Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2015) (an ALJ's error is harmless if inconsequential to the ultimate nondisability determination).

> B. The ALJ Permissibly Discounted Plaintiff's Testimony as to the Limiting Effects of Her Symptoms
>
>> 1. Plaintiff's Testimony

At the hearing, plaintiff testified that she stopped working with elementary students at Caliber Schools in the summer of 2021 because she was experiencing mental health issues like social anxiety and depression. AR 188. She experienced some manic symptoms, hallucinations, a general lack of focus, and high stress when dealing with others. AR 188. She went on medical leave from her job from May 2021 to February 2022. AR 188. Plaintiff returned to work for 12 hours a week from April 2022 to April 2023, when a resurgence of her symptoms led her to quit. AR 188-89. Although working with only two children was manageable, she struggled to manage her responsibilities when assigned eight students due to her anxiety, depression, and PTSD. AR 189.

Plaintiff explained that her social anxiety causes her to stress and lose focus when in large groups. AR 190. During the era of remote instruction, for example, she was overwhelmed when attending professional development meetings with 50-60 members. AR 190. The anxiety can lead to impatience and increased irritability. AR 193. She also worries about a lot of things, chief among them her family's livelihood, forcing her to try working while experiencing mental health issues despite failure to do so. AR 192-93. Medication somewhat helps her condition, but she is finetuning a few prescriptions that are proving ineffective. AR 193.

As to depression, plaintiff would experience low mood and fatigue four to five days a week, making it hard to work. AR 191-92. The medication she uses to try treating her depression

causes drowsiness. AR 191. The intensity of her depression varies, sometimes keeping her in bed until 11:00 A.M. and forcing her to push everything else in her day back. AR 192.

Her PTSD, meanwhile, causes "panic attacks, crying spells and intrusive thoughts and flashbacks that would happen throughout [her]…workday, making it hard…to redirect…and refocus." AR 191. The flashbacks are to traumatic moments from childhood, like her father's early death from cirrhosis, and occur three to four days per week. AR 191-92.

Because large crowds overwhelm plaintiff, including in large stores like Walmart and Target, she orders most of her purchases online. AR 193. Although her anxiety attacks mostly happen away from home, she had a few "anticipatory anxiety" attacks before leaving the house when she tried to go back to work. AR 194. She suspects that if she had to go to a part-time job, the idea of driving into traffic would trigger these attacks and frustrate efforts to get there on time every day. AR 196.

On her best days, plaintiff wakes up at 10:00 A.M., takes her medication, showers, completes her chores and errands, walks her dog, hikes, and finishes her schoolwork. AR 196-97. On days with more anxiety and fatigue, totaling between three and five per week, she will not leave her house and will abandon her chores in favor of self-care activities. AR 197. Her social anxiety prevents her from making friends and having a social life beyond going out with her husband. AR 198.

Recognizing that her conditions bar her from teaching, plaintiff is working with a Department of Rehabilitation counselor to train for another career path. AR 194. She is enrolled in Arizona State University's online speech and hearing science program in hopes of becoming a speech language pathologist assistant, where she would work with smaller groups than before. AR 194. The program is self-paced so she can attend online classes and complete assignments around her schedule, including her depressive symptoms and inability to focus. AR 195.

2. <u>The ALJ's Findings</u>

The ALJ found that the medical record "failed to fully substantiate" plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms. AR 24. Medical exam results showed that plaintiff was "alert and oriented times three" and had a "goal directed thought

process[.]" AR 24.  She also demonstrated normal speech, mood, affect, memory, insight, and judgment.  AR 24-25 (citing AR 671, 697, 1007).  Providers asserted plaintiff's symptoms were "fairly well controlled."  AR 25 (citing AR 951).

The ALJ also considered plaintiff's reported daily activities in some detail.  AR 25 (citing AR 406-09.)  The decision noted that plaintiff reported being capable of preparing meals, performing housework, cleaning, raking, watching television, doing household repairs, doing laundry, gardening, caring for her dog, driving, and shopping.  Id.  The ALJ found these activities demonstrated plaintiff's capacity to perform work consistent with the RFC, which included non-exertional limits intended to minimize stress and thus accommodate the mental health challenges that made her unable to perform past work.[5]

### 3. Governing Legal Principles

In the Ninth Circuit, evaluating a claimant's testimony as to subjective symptoms is a two-step process.  First, the claimant must provide "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991))).  The claimant need not, however, provide evidence that the impairment would result in the same degree of pain or other symptom as what the claimant alleges.  Garrison, 759 F.3d at 1014.

Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's testimony about the severity of such symptoms unless there is "'specific, clear and convincing reasons for doing so.'"

---

[5] " [D]ue to a combination of the claimant's mental health impairments and resulting moderate concentrating, persisting, or maintaining pace, and moderate adapting or managing oneself, the undersigned concludes that the claimant is limited to simple routine work which is work that requires only simple decisions and no complex decisions; and work that is self-paced as opposed to working in a production-rate environment or in a job with an hourly quota.  Furthermore, due to a combination of the claimant's mental impairments and no more than moderate interacting with others limitations, she is further restricted to work involving occasional interaction with supervisors and coworkers but only superficial contact with the general public."  AR 24.

Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).[6] Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c).

    4. The ALJ Did Not Err in Considering Objective Mental Health Findings

Inconsistency between the medical evidence and a claimant's testimony about their subjective symptoms is a proper ground for rejecting the claim. Smartt, 53 F.4th at 499; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). Here the ALJ accurately identified several places in the medical record where plaintiff was observed clinically

---

[6] In this regard, so long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Defendant argues that the clear and convincing standard in Garrison conflicts with this "substantial evidence" standard, as articulated in 42 U.S.C. § 405(g). ECF No. 17 at 19, n.5; 759 F.3d at 1015. Defendant conflates the evidentiary burden the ALJ must meet in its decision with the standard of review that courts must apply when analyzing such decisions.

to be functioning at a level higher than that portrayed in her hearing testimony. Plaintiff argues that the ALJ erred by picking out a few isolated instances of improvement and ignoring the overall pattern of dysfunction demonstrated by the longitudinal record. Such "cherry-picking" is indeed improper. See Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016) ("[a]n ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement' . . . with an understanding of the patient's overall well-being and the nature of her symptoms.").

Had the ALJ discounted plaintiff's testimony on the sole basis of the specified instances of improvement in the medical record, the undersigned would agree that here had been error. But the ALJ did not do that. She focused her attention primarily on the matter of plaintiff's daily activities and other objective evidence of functioning, to which the court now turns. Such activities are directly relevant to "an understanding of the patient's overall well-being and the nature of her symptoms," id., and therefore appropriately guide assessment of the longitudinal record.

### 5. The ALJ Permissibly Relied on Plaintiff's Daily Activities

The ALJ found that the level of incapacitation plaintiff claimed was not consistent with her daily activities. Upon careful consideration, the court finds no error. While not all of the daily activities identified by the ALJ are directly transferable to a work setting, see Molina, 674 F.3d at 1113 (ALJ may consider "participation in everyday activities indicating capacities that are transferable to a work setting"), plaintiff's overall level of productive activity is indeed inconsistent with the degree of incapacitation to which she testified. Accordingly, it was permissible for the ALJ to find the testimony less than fully credible. See id. (testimony may be discounted even when reported activities reflect "some difficulty functioning" but still "contradict claims of a totally debilitating impairment.")

Moreover, the ALJ provided reasoned explanations of the specific findings related to pet care and driving. As to pet care, the ALJ stated that "the ability to care for pets can be quite demanding both physically and emotionally, without any particular assistance. These activities suggest a level of functioning and concentration inconsistent with the degree of limitations

alleged at the hearing." AR 25. Because plaintiff's ability to concentrate was directly relevant to the disability determination, this was an appropriate point.

On the issue of driving, the ALJ elaborated even further, with an unusual degree of detail:

> While the claimant contends that her functional abilities are severely limited, it is difficult to reconcile the fact that the claimant, throughout the period of alleged total disability, reported she continued to operate a motor vehicle. The operation of a vehicle is a very dynamic task in a changing environment that is largely influenced by the driver. Since the primary role of any motor vehicle operator is the safe control of the vehicle within the traffic environment, driving can be considered a complex task that requires the making of continuous decisions/judgment calls. It also requires social interaction, and the ability to multitask while dealing with external and internal stimuli. Driving as an activity is therefore made up of strategic decisions (i.e. route- choice while driving, mirror use, vehicle speed, vehicle condition, response to emergency vehicles, etc.), maneuvering decisions (i.e. reaction to: the behavior of other traffic participants, road hazards, pedestrians, animals, etc.), and control decisions (i.e. basic vehicle operation, radio and/or cellphone operation, etc.), all of which indicate functioning at a level in excess of that alleged by the claimant. Nevertheless, when demand exceeds a driver's capacity, it may result in affected performance; however, in the instant matter, it is clear from the record that, at least at times relevant to the issue of disability, the claimant retained the cognitive ability to drive, and the fact she was capable of such a complex task was considered when assessing the severity of her allegations regarding the aforementioned mental disorders.

Id.

The ALJ clearly identified the cognitive and functional *capacities* reflected by these activities which are transferable to a work setting, see Molina, 674 F.3d at 1113, and which are inconsistent with parts of plaintiff's testimony. Accordingly, the ALJ permissibly concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence. Especially when considered together with the medical evidence previously addressed and the fact that plaintiff had, even with difficulty, worked part time after the alleged onset of disability, these considerations provide a permissible basis for the ALJ's determination that plaintiff is not as limited as she alleged.

C. The ALJ Was Not Required to Explicitly Discuss Lay Testimony from Mr. Tiamiyu

In February 2022, plaintiff's husband, Mr. Hamid Tiamiyu, submitted a Function Report in support of plaintiff's application. AR 415. He reported that plaintiff suffered from "extremely

high levels of anxiety, PTSD, and panic attacks" along with manic episodes and depression. AR 415. He asserted this made it difficult for her to "function, focus, remember things, work, and communicate." AR 415. Like plaintiff, he explained the difference between her routine on a good day and on a bad day. AR 416. He also explained that he helped care for their dog and sometimes needed to convince plaintiff to eat or complete tasks when she lacked motivation to do so. AR 416-17. The anxiety and panic also left plaintiff unable to cook, so Mr. Tiamiyu usually cooked for both of them. AR 417. Plaintiff would go outside up to three times per month, but she sometimes needed his help to do so. AR 418. The ALJ did not discuss this Function Report in her decision. See generally AR 18-28.

Under the 2017 amendments to regulations, an ALJ is not required to discuss evidence from nonmedical sources that are based on the same factors as medical opinions. 20 C.F.R. § 404.1520c(d). Plaintiff argues that this did not entirely eliminate the requirement to consider nonmedical opinions. ECF No. 10 at 12-13. Courts in the Ninth Circuit, however, are split on this issue—as reflected in the case that plaintiff cites. See id. (citing Thomas v. Comm'r of Soc. Sec. Admin., Case No. CV-20-01787-PHX-MTL, 2022 WL 292547 at *7, 2022 U.S. Dist. LEXIS 18074 at *22-23 (D. Ariz. Feb. 1, 2022)).

Under the regulations, ALJs must indeed "consider" all evidence in the record, and must follow specific guidelines about how to "articulate [the] consideration" of medical opinions. 20 C.F.R. §§ 404.1520(a)(3), 404.1520c(b). This suggests that an ALJ may consider a lay opinion, like Mr. Hamid Tiamiyu's Function Report, without explicitly discussing it or making any related findings in the written decision. That the Ninth Circuit has reached a similar conclusion, albeit in unpublished opinions, supports this argument. Kennedy v. O'Malley, No. 22-35866, 2024 WL 242992, at *2, 2024 U.S. App. LEXIS 1491 at *6 (9th Cir. 2024).

To the extent that the ALJ should have expressly addressed the Function Report, any error would be harmless. Even under the pre-2017 standard, an ALJ did not need to expressly discredit witness testimony if the reasons for doing so were identical to those outlined for similar rejected testimony. See supra VI.A.3; Molina, 674 F.3d at 1121. The court in Thomas, supra, therefore held that when a lay witness repeats the plaintiff's own testimony, and the reasons for rejecting

16

such testimony were adequate, the failure to discuss lay testimony is harmless because the same reasons would apply. 2022 WL 292547 at *7, 2022 U.S. Dist. LEXIS 18074 at *24-25. Here, Mr. Tiamiyu's Function Report repeats plaintiff's assertions that she suffers from anxiety, PTSD, and depression; that she has both good days where she is productive and bad days where she cannot do anything; and that she rarely leaves the house due to her anxiety when around lots of people. Compare supra VI.B.1 with AR 415-18. The ALJ's failure to address the Function Report does not require remand.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED; and

3. The Clerk of the Court shall enter judgment for the Commissioner and close this case.

DATED: August 1, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE